Albert A. LARCHE, Petitioner–Appellant,

v.

Mark SIMONS, Judge Municipal Court, Respondent–Appellee.

No. 93–16950.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 1995 *.

Decided May 8, 1995.

---

\* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Albert A. Larche, Concord, CA, pro se.

Morris Beatus, Deputy Atty. Gen., San Francisco, CA, for respondent-appellee.

Before: SNEED, PREGERSON, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge.

*Facts*

On October 10, 1989, petitioner Albert Larche was convicted by a jury in a California municipal court of two misdemeanors: corporal injury on a spouse and drawing or exhibiting a firearm. He was sentenced to one year in county jail and three years probation.

Larche sought habeas corpus relief in federal court under 28 U.S.C. § 2254. The district court dismissed Larche's petition without prejudice. It found it undisputed both that Larche had failed to request certification from the superior court to the California Court of Appeal, as is permitted under California Rule of Court 63, and that Larche had failed to seek review of his claims in the California Supreme Court by means of a state habeas proceeding, as is permitted by the California Constitution. The District Court noted, however, that an earlier District Court in the Ninth Circuit had ruled that a misdemeanant need not present his claims to the California Supreme court in order to exhaust his state remedies for federal habeas purposes. The District Court therefore found this question debatable, and accordingly granted a certificate of probable cause to appeal.

*Discussion*

*Mootness*

We begin by noting that we think this appeal should be considered moot. Larche's term of probation ended on October 10, 1993. He is currently free from any restraint upon his liberty. The general rule concerning mootness has long been that a petition for habeas corpus becomes moot when a prisoner completes his sentence before the court has addressed the merits of his petition. *Robbins v. Christianson,* 904 F.2d 492, 494 (9th Cir.1990) (citing *Lane v. Williams,* 455 U.S. 624, 632, 102 S.Ct. 1322, 1327, 71 L.Ed.2d 508 (1982)); *see · Picrin–Peron v. Rison,* 930 F.2d 773, 776 (9th Cir.1991) ("By his petition for habeas corpus, Picrin–Peron has · requested only release from custody. Because he has been released, there is no further relief we can provide."); *see also Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir.1987) (finding that the *coram nobis* writ provides relief for appellants who have served their sentences and have been released from custody, because habeas corpus writ cannot). There has been an excep-

tion, however, for those appellants who would suffer collateral legal consequences if their convictions were allowed to stand. *Zal v. Steppe,* 968 F.2d 924, 926 (9th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992); *White v. White,* 925 F.2d 287, 290 (9th Cir.1991); *Robbins,* 904 F.2d at 495–96.

In the present case, Appellant has not alleged, nor made any showing of, collateral consequences. Accordingly, we believe his claim is moot. *Cox v. McCarthy,* 829 F.2d 800, 803 (9th Cir.1987); *Naylor v. Superior Court,* 558 F.2d 1363 (9th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1530, 55 L.Ed.2d 544 (1978); *see Lane v. Williams,* 455 U.S. 624 at 632–33 n. 13, 102 S.Ct. 1322 at 1327 n. 13, 71 L.Ed.2d 508 ("Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid").

A recent Ninth Circuit opinion, however, precludes such a finding. In *Chacon v. Wood,* 36 F.3d 1459 (9th Cir.1994), the panel held that there is to be a presumption of collateral damages. Moreover, the *Chacon* panel went an additional step, and ruled that the presumption of collateral damages is irrebuttable, even in misdemeanor cases.[1] This we question. In completely eliminating the mootness doctrine from habeas cases, the *Chacon* opinion ignored the constitutional underpinnings of the mootness doctrine, and the traditional role of the Great Writ.[2]

The mootness doctrine is founded on constitutional considerations. As Judge Sneed wrote in *Cox,* "Mootness, however, goes to our constitutional jurisdiction, not our statutory jurisdiction. Under Article III, we may not entertain an appeal if there is no longer a case or controversy before us." 829 F.2d at 803. In the instant case, Larche has neither alleged nor shown collateral consequences. Accordingly, we feel compelled, under *Chacon,* to decide an issue that may well not entail a genuine case or controversy.

Further, policy concerns regarding the function of the Great Writ also dictate that this result be questioned. The Great Writ has always been an instrument of terminating an unconstitutional incarceration. "Historically, the function of the writ is to secure immediate release from physical custody." *Picrin–Peron,* 930 F.2d at 775. Traditionally, it was reserved solely to that task: "[U]nder the writ of habeas corpus we cannot do anything else than discharge the prisoner from the wrongful confinement." *Ex parte Medley,* 134 U.S. 160, 173, 10 S.Ct. 384, 388, 33 L.Ed. 835 (1890); *see Fay v. Noia,* 372 U.S. 391, 430–31, 83 S.Ct. 822, 844–45, 9 L.Ed.2d 837 (1963) ("Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power"). The collateral damages exception then arose, uncertainly, allowing defendants to attack their convictions not

---

**1.** The *Chacon* court relied heavily upon *Hirabayashi v. United States,* which involved a misdemeanor. *Chacon,* 36 F.3d at 1463 (citing *Hirabayashi,* 828 F.2d at 605–06).

**2.** In reaching its holding, the *Chacon* court cited only two cases. Moreover, these cases it cited offer little, if any, support for its ruling. In *Sibron v. New York,* the Supreme Court stated that mootness only precludes a habeas petition if "there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968). This would seem to support a presumption of collateral consequences, and place the burden of proof on the government. But the Supreme Court also wrote, much more recently: "Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a

showing that the complainant suffers actual harm from the judgment that he seeks to avoid." *Lane,* 455 U.S. at 633 n. 13, 102 S.Ct. at 1328 n. 13. Thus, the presumption appears to have been shifted in favor of the government.

*Hirabayashi v. United States,* meanwhile, offers even less support for the *Chacon* decision. While that panel did state that there is a "presumption that legal consequences flow from any criminal conviction," 828 F.2d at 606, it also explained that "habeas corpus relief is not available ... to a defendant who has served his sentence and has been released from custody." *Id.* at 604. Rather, such defendants had to rely on the writ of *coram nobis* for relief. It would be ironic, indeed, then, to cite the *Hirabayashi* case for the proposition that *all* defendants who have been released from custody are entitled to habeas relief, when that panel explicitly stated that *none* were.

just to end unjust imprisonments, but to avoid penalties later in life. The *Chacon* opinion would further diminish the Great Writ. After *Chacon*, "[a] habeas petition challenging the underlying conviction is never moot simply because, subsequent to its filing, the petitioner has been released from custody." 36 F.3d at 1463. Thus, courts are required to hear habeas petitions even where the petitioner expresses no concern over potential collateral consequences. To allow the Great Writ to be used in extremely minor cases, after sentences have been served, in the name of defendants who may not face, or perhaps are not concerned with, potential collateral consequences, is not only to cheapen the writ, but also to invite an onslaught of litigation into the federal judiciary.

■ In sum, we question the wisdom of the *Chacon* decision. We are nevertheless bound by it, and accordingly find that this case is not moot.

*Exhaustion*

Larche contends that he, as a misdemeanant, was not required to present his claims to the California Supreme Court in order to exhaust his state remedies. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

■ It is undisputed that Larche must exhaust all available state remedies before turning to the federal courts for habeas review. *Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982); 28 U.S.C. § 2254. It is a question of first impression, however, whether a misdemeanor appellant, whose direct appeal is exhausted before reaching the state's highest court, must then appeal to that court by means of habeas proceedings in order to exhaust his claims for federal habeas corpus purposes. We hold that he must.

The overriding principle requiring exhaustion of state remedies is comity. It is incumbent on the state courts, as well as the federal courts, to guard the constitutional rights of defendants, and state courts must be given the opportunity to do so. "[I]t would be unseemly in our dual system of government for the federal courts to upset a state-court conviction without affording the state courts the opportunity to correct a constitutional violation." *Duckworth v. Serrano,* 454 U.S. 1, 4, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981). For this reason, we have repeatedly held that felons must appeal all the way to the state's supreme court in order to satisfy the exhaustion requirement. *McNeeley v. Arave,* 842 F.2d 230, 231 (9th Cir.1988); *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir.1986).

■ Indeed, our adherence to the principle of comity is so strong that we require that a state's highest court be given an opportunity to review constitutional claims even when that court's review is discretionary. *Jennison v. Goldsmith,* 940 F.2d 1308, 1310–12 (9th Cir.1991); *see McNeeley,* 842 F.2d at 231–32; *Kellotat v. Cupp,* 719 F.2d 1027, 1031 (9th Cir.1983). Moreover, when we excused a felon's failure to seek habeas review in the California Supreme Court, we emphasized that we did so because that appellant had already presented his claim to the California high court on direct appeal. *Turner v. Compoy,* 827 F.2d 526, 528 (9th Cir.1987), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989). In other words, the California Supreme Court had to be given at least one opportunity to review the appellant's claims.

■ Larche asks that we not require that he, like a felony appellant, present his claims to the California Supreme Court at least once before presenting then to the federal courts for review. He notes that he, unlike a felony appellant, cannot directly appeal to the California Supreme Court. Were we to so hold, however, we would deprive the California Supreme Court of any opportunity to rectify constitutional wrongs committed by its lower courts in misdemeanor cases. This we will not do.

The California Constitution, itself, gives the California Supreme Court original jurisdiction over misdemeanants' habeas claims. Cal. Const. of 1879, art. VI, § 10 (1966). Moreover, that court has demonstrated that it will hear such claims. *Welton v. City of Los Angeles,* 18 Cal.3d 497, 134 Cal.Rptr. 668, 674, 556 P.2d 1119, 1124 (1976); *Ex parte Bell,* 19 Cal.2d 488, 122 P.2d 22, 26

(1942); *see also Edelman v. California,* 344 U.S. 357, 361, 73 S.Ct. 293, 296, 97 L.Ed. 387 (1953). Given this state scheme, it would violate the aforementioned principle of comity to allow state misdemeanants to avoid submitting their claims to the California high court, by means of this provided route, and turn instead to the federal courts.

Further, although such review by the California Supreme Court is discretionary, we have repeatedly held that felons must petition state high courts for review, even when such review is discretionary. *Jennison,* 940 F.2d at 1310–12; *see McNeeley,* 842 F.2d at 231–32; *Kellotat,* 719 F.2d at 1031. We see no reason to make felony appellants apply for discretionary review, but not make misdemeanor appellants do the same. Moreover, the language of Section 2254 does not restrict the exhaustion requirement to direct appeals. Indeed, the language of the statute is quite broad:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, *by any available procedure,* the question presented.

28 U.S.C. § 2254 (emphasis added). In the present case, Appellant clearly has the right under California law to raise to that state's highest court, through a state habeas procedure, the constitutional questions presented to the District Court.

In sum, the principle of comity that underlies the exhaustion requirement dictates that the California Supreme Court be given the opportunity to correct any constitutional errors a misdemeanant may raise. We therefore hold that before turning to the federal courts for habeas review, misdemeanants must present their constitutional claims to the California Supreme Court by means of state habeas petitions. Accordingly, the dismissal of Appellant's claims by the District Court is AFFIRMED on this basis. We express no opinion as to whether the District Court also lacked jurisdiction because of Appellant's failure to petition the California Court of Appeal for direct review.

PREGERSON, Circuit Judge, concurring:

I concur in the judgment. However, I write separately to note my disagreement with the opinion's unnecessary criticism of *Chacon v. Wood,* 36 F.3d 1459 (9th Cir.1994).

In *Chacon,* we held that the release of a habeas petitioner does not render his claims moot because of the presumption that collateral consequences may flow from his criminal conviction. *Id.* at 1463. We also held that this presumption is irrebuttable. *Id.* The majority opinion follows *Chacon* to hold that Larche's claims are not moot, but in the same breath, "question[s] the wisdom of the *Chacon* decision."

Such pointed rebuke of a decision of our court is out of order. The appropriate response would be to call for a rehearing en banc.

Moreover, the opinion's objections to *Chacon* are unavailing. *Chacon* is in line with well-established Supreme Court and Ninth Circuit precedent that upholds the presumption of collateral consequences. *Chacon* explains persuasively why the presumption is irrebuttable: "Once convicted, one remains forever subject to the prospect of harsher punishment for a subsequent offense as a result of federal and state [repeat offender] laws." *Id.* The opinion reasons that the *Chacon* rule would require courts to hear habeas petitions even where the petitioner expresses no concern over potential collateral consequences. But a petitioner's very act of pursuing an appeal after his release from custody, as Larche did here, is evidence of his concern with potential collateral consequences.

For these reasons, I concur only in the result reached by the court.